UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM E. SHEPERD, | ) | Case No. 1:07CV793 |
| Plaintiff, | ) | |
| v. | ) | |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) | MAGISTRATE JUDGE GEORGE J. LIMBERT |
| Defendant. | ) | MEMORANDUM OPINION AND ORDER |

Plaintiff William Sheperd seeks judicial review of the final decision of Defendant Michael J. Astrue, Commissioner of the Social Security Administration ("SSA"), denying Plaintiff's application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). ECF Dkt. #1. Plaintiff asserts that the Administrative Law Judge ("ALJ") erred in finding that Plaintiff failed to meet the requirements of mental retardation, as defined in 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.05C ("Listing 12.05C"). ECF Dkt. #17 at 1. For the following reasons, the Court DENIES Plaintiff's appeal and AFFIRMS the ALJ's decision:

## I. PROCEDURAL HISTORY

On April 30, 2004, Plaintiff filed an application for DIB and SSI. Tr. at 51-53. Plaintiff claimed that a "[p]rolapsed disc, lower back pain, osteoarthritis, heart muscle, nerve damage in left foot, [and a] broken bone in right elbow" limited his ability to work. *Id*. at 64. On July 14, 2004, his claim was denied. *Id.* at 36-39. On January 5, 2005, his request for reconsideration was denied. *Id*. at 40-42. On April 5, 2005, Plaintiff filed a late request for a hearing. *Id*. at 43-44. On August 8, 2006, the ALJ conducted a hearing where he received testimony from: Plaintiff; Dr. Chester Plotkin, a medical expert; and Lynn Smith, a vocational expert. *Id*. at 229-265. On September 22, 2006, the ALJ issued a Notice of Decision – Unfavorable denying Plaintiff's claim. *Id*. at 13-21. The ALJ held, inter alia, that Plaintiff did not meet the requirements of Listing 12.05C. *Id*. at 21. On October 3, 2006, Plaintiff filed a request for review of the ALJ's decision. Tr. at 11. On

February 2, 2007, the Appeals Council denied Plaintiff's request for review. Tr. at 5-7. On March 17, 2007, Plaintiff filed the instant suit alleging that the ALJ's decision was erroneous because substantial evidence does not support his finding that Plaintiff does not meet Listing 12.05C. ECF Dkt. #17 at 1, 6-10. On September 27, 2007, Defendant filed a response brief. ECF Dkt. #18.

## II. SYNOPSIS OF THE EVIDENCE

Since Plaintiff limits his claim to the ALJ's finding regarding Listing 12.05C, the undersigned limits review to the evidence relevant to that claim.

### A. Personal Background

Plaintiff was born in 1957, making him approximately 51 years old. *See* Tr. at 51. Plaintiff is the oldest of 7 children in his family. *Id*. at 106. He grew up with his mother and his step-father. *Id*. He has a history of abuse by his step-father. *Id*. Plaintiff is single and has never been married. *Id*. He has a son who is approximately 10 years old. *See id*. Plaintiff lives with his sister in a rented duplex. *Id*.

Plaintiff graduated high school in 1977. Tr. at 107. While in school, he was enrolled in special educations classes. *Id*. He attended college for two years. *Id*. at 233. At college, he took special education classes and played football. *Id*.

Plaintiff was employed at a factory from May, 1989 through April, 2003. Tr. at 65. He was responsible for operating a stamping machine to produce small electronic products. *Id*. He was terminated due to difficulties with his arm. *Id*.

### B. Medical Evidence

On September 9, 2004, Michael Leach, Ph.D. conducted a psychological evaluation of Plaintiff at the Bureau of Disability Determination's request. Tr. at 106- 110. Dr. Leach conducted an adult clinical interview, a Wechsler Adult Intelligence Scale-III (WAIS-III) test, a Wechsler Memory Scale-III (WMS-III) test, and a Wide Range Achievement Test-3 (WRAT-3) Reading Subtest. *Id*.

Plaintiff reported that he had seen a mental health professional for depression in the past. Tr. at 107. He had taken Prozac and Thorazine to treat depressive symptoms, but he stopped treatment because he did not like the way the medications made him feel. *Id*. Dr. Leach did not

-2-

perceive Plaintiff as depressed at the time of the interview. *Id*. at 108. Plaintiff reported a history of suicidal thoughts, but none at the time of Dr. Leach's evaluation. *Id*. at 107. Plaintiff reported difficulties with his concentration and with his memory. *Id*.

Plaintiff reported that he had difficulties managing his anger. Tr. at 107. He stated that he had been incarcerated and was released in 2000. *Id*.

Dr. Leach noted that Plaintiff's speech was simple and easily understood. Tr. at 108. Plaintiff became frustrated with lengthy or difficult questions. *Id*. Dr. Leach observed that Plaintiff was functioning with a limited range of intellectual functioning. *Id*. Plaintiff required difficult or lengthy questions to be repeated due to comprehension problems. *Id*. He exhibited long latencies in responding, and had difficulty understanding long or complex instructions. *Id*.

During the cognitive functioning exam, Plaintiff was not able to complete serial 7's, but he was able to recite 5 digits forward and 3 digits backwards. Tr. at 108. He was not able to give the meaning of simple proverbs. *Id*.

During psychological testing, Plaintiff scored a Verbal IQ of 67, a Performance IQ of 79, and a Full Scale IQ of 70 on a WAIS-III scale. Tr. at 109. Dr. Leach concluded that Plaintiff's test scores placed him in the borderline range of intelligence. *Id*. Plaintiff's WMS-III memory test scores were: Immediate Memory Index of 68, Delayed Index of 65, and General Memory Index of 66. *Id*. Dr. Leach concluded that these results were consistent with Plaintiff's overall level of intellectual functioning. *Id*. Lastly, Plaintiff obtained a raw score of 10 on a Nelson Denny Reading Comprehension Test, placing him at a fourth grade reading level. *Id*.

Based on the psychological tests he administered, Dr. Leach concluded that Plaintiff was functioning with a limited range of intelligence. *Id*. Tr. at 108-09. Dr. Leach determined that Plaintiff's GAF was 55. *Id*. at 109. Dr. Leach opined that Plaintiff's ability to relate to others was mildly impaired due to his intellectual capacity. *Id*. He believed that Plaintiff could have difficulties interacting with others who have a higher IQ. *Id*. Dr. Leach found mild impairments in Plaintiff's ability to understand, remember, and follow instructions. *Id*. He found mild impairments in Plaintiff's ability to maintain attention, concentration, persistence, and pace to perform simple tasks. *Id*. at 110. Lastly, Dr. Leach found mild impairments in his ability to withstand the stresses and

pressures associated with daily work activity. *Id*.

### C. Testimonial Evidence

At the administrative hearing, Plaintiff's lawyer asked the ALJ to consider Listing 12.05C. Tr. at 232. The lawyer claimed that Plaintiff's IQ scores established mental retardation under Listing 12.05C. *Id*. The ALJ inquired of Plaintiff's educational history. *Id*. at 233. Plaintiff testified that he had been in special education classes throughout high school and two years of college. *Id*. He stated that he earned C grades. *Id*. He testified that he can read "easy words," but he cannot read long words. *Id*. at 246. His sister had to read the SSA notices to him. *Id*.

Plaintiff's lawyer argued that Dr. Leach's test results were "very close" to mild mental retardation levels. Tr. at 233. The ALJ asked why Plaintiff should be considered to have adaptive deficiencies when he has eared $15,000 - $21,000 a year. *Id*. at 234. Plaintiff's lawyer responded that "the report" (apparently Dr. Leach's report) supported a finding that Plaintiff meets or equals Listing 12.05. *Id*.

Plaintiff testified that memory loss prevents him from working. Tr. at 236. He stated that he has been having that problem throughout school. *Id*. He testified that his memory is getting worse. *Id*. at 241. He forgets how to drive. *Id*. at 242. He forgets to take his medication, and his sister has to remind him. *Id*. He forgets to turn the stove off when he leaves the house. *Id*. He has difficulty recalling his social security number. *Id*.

Plaintiff entered a lengthy dialogue regarding his physical symptoms and his depression, neither is relevant to the instant claim. *See* Tr. at 236-41, 242; *supra* § II.

Plaintiff testified that he lives with his sister and that she does all of the cooking, cleaning, and laundry. Tr. at 242. He stated that he is able to take his clothes off the line and put them in the dryer. *Id*. at 243. He can also wash dishes. *Id*. He spends his day's watching television, moving clothes around the house and doing a little dusting. *Id*. at 246.

Plaintiff stated that he has a driver's license, but he had to take an oral test and passed only after making three attempts. Tr. at 247-48.

Next, the medical expert, Dr. Plotkin testified. Tr. at 248-55. Under Listing 12.05, Dr.

Plotkin testified that Plaintiff had an IQ of approximately 70. *Id*. at 250. Dr. Plotkin testified that his memory is consistent with his full scale IQ of 70. *Id*. Dr. Plotkins indicated that the IQ scores were valid, but the ALJ rejected his testimony because it was beyond Dr. Plotkin's area of expertise. *Id*. The remainder of Dr. Plotkin's testimony involved Plaintiff's physical conditions.

Lastly, vocational expert Lynn Smith testified. Tr. at 255-64. The ALJ asked Smith to consider a person of the same age and vocational background as Plaintiff, with no exertional limitations and limitations to simple routine work with minimal interaction with the public. *Id*. at 255. Smith opined that such a person could perform Plaintiff's past work. *Id*. at 256.

At this point, the ALJ asked Plaintiff to clarify his work history. Tr. at 257. Plaintiff testified that he held multiple positions at a stamping factory. *Id*. He began lifting small parts for about 6 months. *Id*. Then he began running heavy parts, approximately 100 pounds, through a machine. *Id*. He held that position for 8 years. *Id*.

The vocational expert then testified that Plaintiff's previous job could range from sedentary work to heavy exertion. *Id*. at 261. She opined that Plaintiff could perform his position at the sedentary level. *Id*.

The ALJ posed a second hypothetical limiting Plaintiff to light exertion with no dangerous machinery, hazardous work environments, driving requirements, unprotected heights, ropes, ladder or scaffolds. Tr. at 262. The ALJ's hypothetical provided for occasional use of ramps and stairs. *Id*. The vocational expert opined that Plaintiff could perform the job of a mail clerk, a cleaner/housekeeper, or a ticket seller. *Id*. at 263.

### D. Evidence Submitted Following the Administrative Hearing

Following the administrative hearing, Plaintiff submitted medical records from MetroHealth Medical Center to the Appeals Council. Tr. at 136-229.

On September 2, 2005, Eugenia U. Abonyi, M.D. examined Plaintiff for memory loss. Tr. at 193. Plaintiff told Dr. Abonyi that his memory has been deteriorating since childhood. *Id*. He stated that he cannot remember to put his pants on, he leaves the stove on, he cannot remember people's names, he cannot obtain a job because of his memory, he cannot drive because of his memory, and sometimes he cannot remember his own son's name. *Id*.

Dr. Aboyni measured Plaintiff's recent memory as poor and his remote memory as good. Tr. at 194.  Dr. Aboyni diagnosed major depressive disorders and memory loss.  *Id.* at 194.  He assigned Plaintiff a GAF of 85, which is indicative of absent or minimal symptoms and good functioning in all areas, interested and involved in a wide range of activities, socially effective, generally satisfied with life, no more than everyday problems or concerns. *See* DSM-IV-TR at 34.

On October 10, 2005, Dr. Aboyni again examined Plaintiff.  Tr. at 198.  Plaintiff reported that he was doing better.  *Id.*

On November 30, 2005, Dr. Aboyni noted that Plaintiff had an MRI of the brain that was essentially normal.  Tr. at 201.  Dr. Aboyni noted that Plaintiff was stable.  *Id.*

On January 23, 2006, Dr. Aboyni again noted that Plaintiff was stable.  Tr. at 203.

On March 7, 2006, William Schemmel administered: a Mini Mental State Exam ("MMSE"), a WAIS-III test, a WRAT-3 test, a Continuous Performance Test-II ("CPT-II"), a WMS-III test, a Rey-Osterreith Complex Figure ("Rey"), Trail Making A & B, Grooved Pegboard, and a Hand Dynamometer.  Tr. at 205.  Plaintiff scored a 21 out of 30 on the MMSE.  *Id.*  His gross cognitive functioning fell into the impaired range.  Plaintiff's IQ was Verbal of 73, Performance IQ of 69, and Full Scale of 69.  *Id.*  He was reading at around a second grade level and his arithmetic was at the fourth grade level.  *Id.*  On the CPT-II test, Plaintiff's performance fell within the normal limits.  *Id.*  His Rey test was also in the average range.  *Id.*  His immediate and 30-minute delayed recalls from the WMS-III test were in the impaired range.  *Id.* at 206.

### III. STATEMENT OF THE LAW

#### A. Steps to Evaluate Entitlement to Social Security Benefits

An ALJ must proceed through the required sequential steps for evaluating entitlement to disability insurance benefits.  These steps are:

1. an individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. an individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

    3.    if an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. §§ 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

    4    if an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

    5.    if an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden of going forward with the evidence at the first four steps, and the Commissioner has the burden at Step Five to show that alternate jobs in the economy are available to the claimant, considering his age, education, past work experience and RFC. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

### B. Plaintiff's Burden under Listing 12.05C

In the third step of the analysis to determine a claimant's entitlement to SSI or DIB, it is the claimant's burden to bring forth evidence to establish that his impairment meets or is medically equivalent to a listed impairment. *Evans v. Sec'y of Health & Human Servs*., 820 F.2d 161, 164 (6th Cir. 1987). In order to meet a listed impairment, the claimant must show that his impairment meets all of the requirements for a listed impairment. *Hale v. Sec'y,* 816 F.2d 1078, 1083 (6th Cir. 1987); 20 C.F.R. § 404.1525(d). An impairment that meets only some of the medical criteria does not qualify, despite its severity. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

In order to establish a disability pursuant to Listing 12.05C, a claimant must meet three requirements: (1) he must satisfy the introductory paragraph of Listing 12.05, which requires the showing of significantly subaverage general intellectual functioning with deficits in adaptive functioning that had initially manifested prior to the age of 22; (2) he must establish that he meets the first requirement of Listing 12.05C by showing that he has a valid verbal, performance, or full-scale IQ of 60 through 70; and (3) he must establish that he meets the second requirement of Listing 12.05C by showing he has a physical or mental impairment, other than the mental retardation

impairment, that imposes an additional and significant work-related limitation of function. 20 C.F.R. Pt. 404, Subpt. P, App.1, Listings 12.00(A)., 12.05, 12.05C; *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001); *Daniels v. Commissioner of Social Security*, No. 02-3224, 2003 WL 21774004 at n1 (6th Cir. July 30, 2003), unreported; *Cooper v. Commissioner of Social Security*, No. 06-5606, 2007 WL 543059 at *1 (6th Cir. Feb. 15, 2007), unreported.

### C. Standard of Review

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. The Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, the Court is limited to determining whether substantial evidence supports the Commissioner's findings and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the ALJ's decision, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v. Commissioner of Social Security*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Id.*; *Walters,* 127 F.3d 525, 532 (6th Cir. 1997). Substantiality is based upon the record taken as a whole. *Houston v. Secretary of Health and Human Servs.*, 736 F.2d 365 (6th Cir. 1984). Furthermore, in reviewing the ALJ's decision, deference is given to the ALJ's credibility determinations. *See Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1234 (6th Cir. 1993). A reviewing court may not retry the case, resolve factual or evidentiary conflicts, or decide questions of credibility. *See Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994).

## IV. ANALYSIS

As a preliminary matter, it is necessary to address the additional evidence Plaintiff submitted to the Appeals Council. As Defendant notes, the Court cannot overturn the decision of an ALJ based

upon new evidence. *Cotton v. Secretary of Health & Human Services*, 2 F.3d 692, 695-96 (6th Cir. 1993). Upon a showing of good cause for failure to produce the evidence prior to the administrative hearing and a showing that the new evidence is material, the Court may remand the case for further proceedings before the ALJ based upon the new evidence. *Id*.; 42 U.S.C. § 405(g).

Here, Plaintiff has made no showing that remand for consideration of new evidence is proper. Therefore, in reviewing the ALJ's decision, the Court considers the evidence that was in the record before the ALJ.

At issue in this case is whether the ALJ erred in finding that Plaintiff does not meet or equal the requirements for disability set forth in Listing 12.05C. ECF Dkt. #17 at 1, 6-9. Plaintiff claims that the ALJ's decision did not articulate an analysis pursuant to Listing 12.05C, and the ALJ did not use a medical expert that could address Plaintiff's mental impairments. *Id*. at 8.

The ALJ stated, "Counsel argued the evidence supports a finding that Sheperd's mental health problems met section 12.05C of the listing of impairments found in appendix 1. I do not agree with that finding for the reasons mentioned above in Finding 5." Tr. at 21. In Finding 6,[1] the ALJ stated that Dr. Leach diagnosed Plaintiff with borderline intellectual functioning rather than mild mental retardation. *Id*. at 19.

The ALJ's finding is adequate to establish that Plaintiff has not carried his burden with respect to the introductory paragraph of Listing 12.05C. As noted above, Listing 12.05C requires a claimant to meet the diagnostic description in the introductory paragraph of Listing 12.05 in addition to the criteria set forth in Listing 12.05C. *Foster*, 279 F.3d at 354; *Daniels*, 2003 WL 21774004 at n.1; *Cooper*, 2007 WL 543059 at *1. The language of the diagnostic criteria in the introductory paragraph of Listing 12.05 closely tracks the diagnostic criteria for mental retardation set forth in *The Diagnostic and Statistical Manual of Mental Disorders* (4th ed. text revision 2000) ("DSM-IV-TR"). The DSM-IV-TR provides the following diagnostic criteria for mental retardation:

---

[1] The ALJ's decision has two sections labeled "Finding 6." In Finding 5, he did not address Plaintiff's mental impairments. He did however, address the mental impairments in the first section labeled "Finding 6" at Tr. 19-20.

    A.      Significantly subaverage intellectual functioning: an IQ of approximately 70 or below on an individually administered IQ test (for infants, a clinical judgment of significantly subaverage intellectual functioning).

    B.      Concurrent deficits or impairments in present adaptive functioning (i.e., the person's effectiveness in meeting the standards expected for his or her age by his or her cultural group) in at least two of the following areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety.

    C.      The onset before age 18 years.

*Code*[2] based on degree of severity reflecting level of intellectual impairment:

**317 Mild Mental Retardation:**      IQ level 50-55 to approximately 70
**318.0 Moderate Mental Retardation:**      IQ level 35-40 to 50-55
**318.1 Severe Mental Retardation:**      IQ level 20-25 to 35-40
**318.2 Profound Mental Retardation:**      IQ level below 20 or 25
**319 Mental Retardation, Severity Unspecified:**      when there is strong presumption of Mental Retardation but the person's intelligence is untestable by standard tests.

DSM-IV-TR at 49 (emphasis original). Listing 12.05 sets forth the criteria for disability based upon mental retardation:

> 12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
>             \* \* \*
>
>     C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function; . . .

---

    [2]      The DSM-IV-TR assigns a numerical code to each mental disorder. Under the heading of "Mental Retardation," the DSM-IV-TR lists five varieties of mental retardation base upon the severity of the person's cognitive deficiency.

20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.05. Both the DSM-IV-TR and Listing 12.05 require a showing of "significantly subaverage general intellectual functioning." Both require a showing of deficits in adaptive functioning. Here, the DSM-IV-TR differs only by including deficits "*or impairments*" and adding the term "present" before "adaptive functioning." Both the DSM-IV-TR and Listing 12.05 require a showing of onset during the developmental period. The DSM-IV-TR requires that showing to be made prior to age 18, while Listing 12.05 requires onset prior to 22. Lastly, both require a showing of an IQ score below 70. Based on the foregoing similarities, the Court concludes that an ALJ can be justified in denying a claim under 12.05C when the only examining psychologist limits his diagnosis to exclude mental retardation.

The Sixth Circuit recently affirmed an ALJ's denial of SSI benefits under Listing 12.05C because the claimant had a diagnosis that excluded mental retardation. *West v. Commissioner Social Sec. Admin.*, No. 06-5763, 2007 WL 1991059 at *5 (6th Cir. July 05, 2007), unreported. In *West*, the claimant had two psychological evaluations (one was conducted by a psychologist and one was not), and neither evaluator diagnosed him with mental retardation. *Id*. The psychologist diagnosed the claimant with borderline intellectual functioning and adjustment disorder, but not mental retardation. *Id*. The Sixth Circuit held that the medical evidence supported the ALJ's finding that the claimant did not satisfy Listing 12.05C. *Id*.

The case at bar is similar to *West* because Dr. Leach examined Plaintiff, obtained a valid Verbal IQ of 67, Performance IQ of 79, and Full Scale IQ of 70, but chose to diagnose Plaintiff with Borderline Intellectual Functioning rather than Mild Mental Retardation. *See* Tr. at 109. Further, Here, Dr. Leach was aware that Plaintiff had been in special education classes and identified as developmentally handicapped. *See id*. at 107. Yet, Dr. Leach did not advance a diagnosis of mild mental retardation. Therefore, the ALJ's analysis pointing to Dr. Leach's diagnosis is sufficient to conclude that Plaintiff has failed to carry his burden with respect to Listing 12.05C.

Plaintiff suggests that the Court should presume that his IQ was constant throughout his life. ECF Dkt. #17 at 8 citing *Hodges v. Barnhart*, 276 F.3d 1265 (11th Cir. 2001).

First, *Hodges* provides for a *rebuttable* presumption, and that presumption has been

overcome in this case because Dr. Leach, who was aware of Plaintiff's developmental handicaps, diagnosed borderline intellectual functioning instead of mild mental retardation.

Further, on a previous occasion when Plaintiff's lawyer represented another claimant seeking benefits under Listing 12.05C, this Court distinguished the *Hodges* case by looking to the claimant's past vocational experience. *Bilka v. Commissioner of Social Security*, 252 F.Supp.2d 472, 475-76 (N.D.Ohio 2002). The *Bilka* court noted that the Sixth Circuit has refused to accept an IQ score of 66 produced when claimant was over age 22 because of evidence of past vocational and academic achievement. *Id*. citing *McDonald v. Secretary of Health and Human Services*, 786 F.2d 1165, 1986 WL 16598 at *5 (6th Cir. 1986), unreported. The *Bilka* court concluded that a claimant who worked as a die cast operator for 20 years and who had IQ tests prior to age of 22 outside of the range required for Listing 12.05C was not disabled. *Bilka*, 252 F.Supp.2d at 476.

Here, Plaintiff worked as a machine operator for nearly 14 years. Tr. at 65. Plaintiff also attended 2 years of college. *See id*. at 69. He is mentally able to complete tasks such washing laundry and washing dishes. *Id*. at 243. Lastly, although it took three attempts, Plaintiff was able to obtain a driver's license. *Id*. at 246-49. Therefore, sufficient evidence exists to rebut any presumption in favor of a constant IQ. Although the ALJ did not specifically articulate these factors as bases for rejecting any presumption in favor of a constant IQ, the Court reiterates that Dr. Leach's borderline intelligence diagnosis without concluding that Plaintiff is mentally retarded constitutes substantial evidence in support of the ALJ's decision.

## V. CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's claim and AFFIRMS the ALJ's decision.

Date: April 9, 2008   *s/ George J. Limbert*
                      GEORGE J. LIMBERT
                      UNITED STATES MAGISTRATE JUDGE